*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CV-0231

SHEILA SAMADDAR, DDS, *et al.*, APPELLANTS,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2023-CAB-003504)

(Milton C. Lee, Jr., *Chief Judge*)

(Submitted December 11, 2025          Decided July 16, 2026)

*Aristotle Theresa* was on the briefs for appellants.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Graham E. Phillips*, Deputy Solicitor General, and *Sonya L. Lebsack*, Assistant Attorney General, were on the brief for appellee.

Before DEAHL, HOWARD, and SHANKER, *Associate Judges*.

HOWARD, *Associate Judge*: Following years of separate litigation between Appellants and a third-party developer regarding the use of a shared easement, Appellants now turn their attention to the D.C. Zoning Commission (Commission). Appellants argue that the Commission flouted the law and violated their right to

substantive due process (1) by failing to collect statutorily required signatures on the developer's application for Design Review and (2) by failing to inquire into the nature and finality of a signed easement agreement between Appellants and a third-party developer. Appellants argue that this court should reverse the trial court's order dismissing their complaint for failure to state a claim because the Commission's actions were egregious, trammeled personal property rights, and caused grave unfairness to them. We are unpersuaded by their arguments. While we conclude that the trial court improperly dismissed Appellants' complaint for lack of subject matter jurisdiction, Appellants have failed to assert plausible facts beyond conclusory and perfunctory statements to allege willful conduct on behalf of the Commission. The Commission's actions, at worst, amounted to mere negligence and thus fell short of constitutional error. We therefore affirm the trial court's dismissal for failure to state a claim.

## I.    Background

On July 24, 2020, 1319 South Capitol Owner, L.L.C. (Developer), filed an application for Design Review with the Commission to review its plan for an eleven-story residential development located at 1319 South Capitol Street SW. The development site itself is L-shaped and allows for ingress from South Capitol Street via a ten-foot wide east-west public/private alleyway and egress to N Street SW via

a sixteen-foot wide north-south public alley along the western side of the property. Appellants, Dr. Sheila Samaddar and Gregory Keagle, each own rowhouses abutting the eastern side of the development property in the 1300 block of South Capitol Street SW. The proposed development was years in the works prior to the Developer's application and included input from community interests including the Southwest Neighborhood Assembly, Syphax Village,[1] the Advisory Neighborhood Commission (ANC) 6D, and private individuals.

---

[1] Syphax Village is a condominium association that shares the western alley with the development property. The condominium takes its name from the William Syphax School, a historic landmark that was converted from a school into a condominium in 2005. *About*, Syphax Village Condominium Association, https://www.syphaxvillage.com/about/; https://perma.cc/Y9QP-A3JH (last visited May 13, 2026).



GROUND PLAN
1" = 40'-0"

The development property is located within a "Capitol Gateway" zone (CG-2) as determined by the District's zoning regulations. 11 D.C.M.R. Subtitle K § 500.1(g). Capitol Gateway zones provide for specific development standards to ensure economic development and provide consistent aesthetic qualities; CG-2 in particular "is intended to permit medium-density mixed-use development with a focus on residential use and provide for the establishment of South Capitol Street as a monumental civic boulevard." *Id.* §§ 500.1(a)-(i), 500.3, 502.1. With respect to Capitol Gateway developments, "all proposed uses, buildings, and structures . . . shall be subject to review and approval by the Zoning Commission" to ensure the proposed development complies with the applicable zoning regulations and determine whether special exceptions or variances should be allowed. *Id.* §§ 512.2, 512.7. This process is known as Design Review. 11 D.C.M.R. Subtitle X § 600. As part of the review process, and because the development property has frontage on South Capitol Street, developers need to ensure, among other things, that their project incorporates "access to parking and loading and location of service areas to recognize the proximate residential neighborhood use and context." 11 D.C.M.R. Subtitle K § 512.6(b).

On October 11, 2017, "[i]n connection with the construction of the Project on the Development Side," Appellants signed an agreement with Developer's predecessor, 1319 South Capitol Associates, LLC, to terminate "any existing access

easements and right-of-way reserved or otherwise referenced in any deed." Prior to this agreement, Appellants' properties were subject to a recorded easement that created a right of way running north-south, parallel to South Capitol Street, to allow access to the rear of their respective properties. The new 2017 agreement granted a perpetual non-exclusive easement for a twelve-foot wide north-south right of way running parallel to South Capitol Street "for the sole purpose of vehicular and pedestrian ingress, egress and from the [east-west] Alley." The agreement effectively allowed continued access to the rear of Appellants' properties via a twelve-foot-wide north-west shared ground accessway and allowed Appellants to use the ten-foot wide east-west alley to egress the block towards N Street through the western sixteen-foot wide north-south alley.

In October 2020, the Commission held a virtual public hearing to consider Developer's Design Review application where the 2017 agreement was also discussed and considered by the Commission. During the hearing, Developer mentioned the agreement with Appellants in their opening presentation and detailed the manner in which the agreement provides access for ingress and egress to Appellants' properties. Developer also noted that the "access agreement is signed[] and will be recorded prior to the start of construction." Following Developer's opening remarks, Commissioner May questioned the agreement: "what's the point of having that easement area there? Is that to provide rear access to . . . the couple of

townhouses that are not part of this development?" Developer explained that the easement serves the "natural filtering" of traffic coming and going from the development property. Commissioner May then inquired how the easement would affect Appellant Dr. Samaddar's property specifically, because her property pushes into the easement itself. Developer reiterated that "there is, actually, an easement that has been signed, but not yet recorded," then noted that "the parties are still working out the kind of final details of that easement to allow it to be recorded." Commissioner May took this to mean that "there's no impediment to [Developer] developing that entire area the way [Developer] intend[s] to develop it," which Developer affirmed, "[r]ight."

Speaking as an opponent to the development, Mr. Keagle acknowledged the easement: "The easement always existed. It was always there. All [Developers] did was add two extra feet, which we [the Appellants] did want more." Dr. Samaddar, also speaking as an opponent to the development, requested that the easement be "reviewed prior to any approval by the Zoning Commission." Following these comments, Developer reiterated again that "[t]here is an easement that exist[s]. There's a history of the easements here. There are some recorded easements that are being unwound a[nd] rewound let's say. So there is a current, pending, unrecorded easement that's executed by all the owners." Developer represented at the hearing that it was "not coming over [the easement] or over Ms. Samaddar's property. [The

easement] is going to be open to the sky and provide a [twelve]-foot wide component of vehicular, pedestrian access." Commissioner May, having considered statements from both Appellants and Developer, concluded that any disagreement in how the easement was to be used is "a property issue between the developer and Dr. Samaddar that [Developer] you're going to have to sort out."

Following the public hearing, the Commission voted to approve Developer's Design Review application and issued its Order of Approval on August 18, 2021. *See* Zoning Commission Order No. 20-18. The Order acknowledged a statement from Developer that it would agree to a twelve-foot easement to allow access to Appellants' properties and that a final agreement would be provided to the District Department of Transportation; that same language was also included in the Commission's order granting the application.

Dr. Samaddar appealed the Commission's Order and filed a separate civil suit against Developer, alleging trespass, conversion, and other breaches of the 2017 easement agreement. *See* Petition for Review, *Samaddar v. D.C. Zoning Comm'n*, No. 21-AA-0650 (D.C. Sept. 16, 2021); Complaint, *Samaddar v. 1319 S. Capitol Owner, LLC*, No. 2022-CA-001958-B (D.C. Super. Ct. May 4, 2022). While both cases were ongoing, Appellants signed a new easement agreement on November 3, 2022; that agreement did not substantively change the twelve-foot easement from

2017. Dr. Samaddar dismissed both cases following the new easement agreement. On June 14, 2023, Appellants then filed the complaint giving rise to this appeal against the District.

Appellants brought two substantive due process claims under 42 U.S.C. § 1983 against the District based on the Commission's handling of Developer's Design Review application. In their complaint, Appellants alleged the District deliberately flouted the law because (1) the Commission failed to collect appellants' signatures in the Developer's application for Design Review, and (2) the Commission failed "to do fundamental and basic fact finding regarding the easement." Appellants claimed that each of the Commission's actions amounted to an intentional and egregious act that caused grave unfairness to Appellants and rose to the level of a substantive due process violation. The District moved to dismiss both claims for lack of subject matter jurisdiction under Super. Ct. Civ. R. 12(b)(1) and for failure to state a claim upon which relief can be granted under Super. Ct. Civ. R. 12(b)(6).

The trial court granted the District's motion for two independent reasons. First, the court concluded it did not have subject matter jurisdiction because Appellants "failed to fully pursue the available local remedies for the alleged violations that occurred in the Zoning Commission's authorization process and

hearing." Second, independent of the jurisdictional dismissal, the trial court determined that Appellants failed to state a viable due process claim on the merits. The trial court found the "grave unfairness" alleged by Appellants did not amount to "a substantial infringement of state law prompted by personal or group animus" or "a deliberate flouting of the law that trammels significant personal or property rights" such that Appellants' substantive due process rights were violated.

This timely appeal followed.

## II.    Discussion

On appeal, Appellants claim the Commission deliberately flouted the law by (1) failing to collect Appellants' statutorily required signatures in Developer's application for Design review; and by (2) deciding to approve the Design Review application despite its knowledge of the unresolved nature of the easement agreement between Developer and Appellants. According to Appellants, the Commission's "actions reflect egregious misconduct and a willful trammeling of Appellants' property rights" such that they have stated a claim that their substantive due process rights were violated. Finally, Appellants argue the trial court erroneously dismissed their claims under Super. Ct. Civ. R. 12(b)(1) for failure to exhaust their administrative remedies for several reasons.

The District responds first that any unenforced application requirements do not plausibly rise to the level of egregious official misconduct. Second, the District argues that the Commission's knowledge of "some dispute" between Developers and Appellants regarding the easement agreement does not support the assertion that the Commission's actions were intended to injure Appellants. Therefore, according to the District, neither of Appellants' claims plausibly asserts a substantive due process violation. The District does not address Appellants' Super. Ct. Civ. R. 12(b)(1) arguments and merely notes that the trial court found it lacked subject matter jurisdiction independent of its finding that Appellants failed to state a claim for relief.

We begin by addressing the trial court's decision to dismiss Appellants' complaint under Super. Ct. Civ. R. 12(b)(1) for lack of subject matter jurisdiction. Viewing the trial court's dismissal as one based on the doctrine of administrative exhaustion, we conclude the trial court erred in finding it did not have subject matter jurisdiction. We decline to reverse, however, because the trial court's dismissal under Super. Ct. Civ. R. 12(b)(6) was proper. Appellants' claims, on their face, fail to plausibly assert sufficient factual matter to sustain a substantive due process claim.

## A.     Subject Matter Jurisdiction

"[T]he issue of subject matter jurisdiction is a question of law," and so our standard of review is de novo. *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002) (citation modified).

"[A] court which lacks subject matter jurisdiction may not issue a ruling on the merits." *UMC Dev., LLC v. District of Columbia*, 120 A.3d 37, 48-49 (D.C. 2015). If at any point the trial court becomes aware that it lacks subject matter jurisdiction over a certain claim, it must dismiss the claim. *King v. Kidd*, 640 A.2d 656, 662 (D.C. 1993); *see also Burton v. District of Columbia*, 835 A.2d 1076, 1079 n.6 (D.C. 2003) (stating that "the trial court *must* dismiss the complaint at any point if it becomes apparent that the court lacks subject matter jurisdiction"). The court may assess subject matter jurisdiction on its own volition or by motion or pleading from a party pursuant to Super. Ct. Civ. R. 12(b)(1).

A trial court may lack subject matter jurisdiction for a number of reasons. To name a few: divestiture by legislative act, *King*, 640 A.2d at 661; subject matter falling within the exclusive jurisdiction of another court, *Powell v. Washington Land Co.*, 684 A.2d 769, 770-72 (D.C. 1996); lack of party standing, *UMC Dev., LLC*, 120 A.3d at 42-43; or a party's immunity from suit, *Pardue v. Ctr. City Consortium Schs. of Archdiocese of Wash., Inc.*, 875 A.2d 669, 674-75 (D.C. 2005). We have

previously held, however, that failure to exhaust administrative remedies does not deprive the court of subject matter jurisdiction. *Burton*, 835 A.2d at 1079. The exhaustion doctrine "is simply a rule of judicial administration rather than a jurisdictional requirement." *Id.* (citation modified). "[E]xhaustion is not a jurisdictional prerequisite to a court proceeding, but merely a requirement analogous to a statute of limitations which is subject to waiver, estoppel, or other mitigating factors." *Id.* (citation modified).

Although "the failure to note a timely appeal at the administrative level should foreclose both administrative and judicial review of [a] claim," *Barnett v. D.C. Dep't of Emp. Servs.*, 491 A.2d 1156, 1160 (D.C. 1985), the exhaustion doctrine "is not carved in stone." *Id.* "[T]here are circumstances in which a court of equity is justified in considering the merits of an administrative action, notwithstanding the petitioner's failure to exhaust administrative remedies." *Id.* at 1161. Those circumstances are most apparent in Title VII Section 1983 claims whereby "compelling circumstances justify[] equity's intervention" and "excuse a failure to exhaust and examine the claim's merits." *Id.*; *see also Roache v. District of Columbia*, 654 A.2d 1283, 1284 (D.C. 1995) (stating that "the exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to [Section] 1983" (quoting *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982))). A litigant's failure to exhaust administrative remedies under these

circumstances does not raise a jurisdictional bar to review. *See Burton*, 835 A.2d at 1079.

While the court ostensibly ruled that the case here was not ripe for review, the only reason it identified for that ruling was that Appellants failed to exhaust their administrative remedies.[2] That reasoning both conflates a failure to exhaust administrative remedies with a lack of ripeness and further conflates the lack of ripeness with a per se jurisdictional defect. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (explaining that ripeness is grounded, in part, in "prudential" rather than jurisdictional concerns). Those are both missteps. At the

---

[2] Though there is some ambiguity in the trial court's written order, we discern the dismissal to be one based on the exhaustion doctrine. The trial court found that Appellants'

> [f]iling the instant action without first pursuing their local remedies to the hilt directly impacts the ripeness of their claim. When plaintiffs failed to seek local relief, either through the administrative process or through direct appeal to the District of Columbia Court of Appeals, they cannot be said to have met the requirement of pursuing local remedies to the hilt before availing themselves of judicial review. This failure on the part of the plaintiffs forecloses the instant pursuit of substantive due process claims as a matter of law.

We read the trial court's reference to "pursuing local remedies to the hilt" as an indication that the trial court substantively dismissed this case for failure to exhaust the administrative process.

very least, whether the failure to exhaust administrative remedies raises a ripeness concern here, it is not the type of ripeness concern that raises a jurisdictional defect. Thus, the trial court's decision to dismiss Appellants' Title VII Section 1983 complaint for lack of subject matter jurisdiction for failure to exhaust the administrative remedies was improper.

In any event, this case is not unripe in any jurisdictional sense. "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized." *Local 36 Intern. Ass'n of Firefighters v. Robin*, 999 A.2d 891, 895-96 (D.C. 2010) (citation modified) (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807-08). Where Appellants' prior two cases (appeal of the Commission's Order and civil suit against Developer) were dismissed, the instant case is not premature in the sense that a resultant final order from the trial court would "supersede the rules of justiciability." *Id.* at 896.

For these reasons, we hold that the trial court improperly dismissed Appellants' claims for lack of subject matter jurisdiction. We decline to reverse and remand this case to the trial court, however, because, as discussed in the following section, dismissal was ultimately proper under Super. Ct. Civ. R. 12(b)(6).

## B.  Substantive Due Process

This court reviews orders granting a motion to dismiss de novo. *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011). "In doing so, we apply the same standard the trial court was required to apply, accepting the allegations in the complaint as true and viewing all the facts and drawing all reasonable inferences in favor of the plaintiffs." *Id.* (citing *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 316 (D.C. 2008)).

To overcome a motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (citation modified) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The only issue on review of a dismissal based on a failure to state a claim is the legal sufficiency of the complaint." *Fraternal Ord. of Police Metro. Dep't Lab. Comm. v. District of Columbia*, 290 A.3d 29, 40 (D.C. 2023) (citation modified). "To pass muster, a complaint must allege the elements of a legally viable claim, and its factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citation modified). Appellants' complaint asserted two alleged violations

of the Fifth Amendment's right to substantive due process. Our review of the trial court's decision to dismiss Appellants' complaint under Super. Ct. Civ. Rule 12(b)(6) therefore hinges on whether the allegations in either claim assert a legally viable and factually plausible substantive due process violation.

The Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. At the core of the concept of due process is the "protection against arbitrary action." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "Substantive due process protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Fraternal Ord. of Police Metro. Dep't Lab. Comm.*, 290 A.3d at 43. The bar to establish a substantive due process right is high and it is well established that courts must remain "reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992); *see also Jordan v. United States*, 235 A.3d 808, 815 (D.C. 2020) ("[T]he Supreme Court has emphasized that we must 'exercise the utmost care' in extending constitutional protection to an asserted substantive due process right.") (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

Indeed, not all harms caused by municipalities or their agents "are actionable under [Section] 1983."[3] *Collins*, 503 U.S. at 123. Therefore, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Conduct that shocks the conscience is "intended to injure in some way unjustifiable by any government interest." *Id.* at 849. Furthermore, we have previously noted that an "administrative action will withstand [a] substantive due process attack unless it is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *George Wash. Univ. v. D.C. Bd. of Zoning Adjustment*, 831 A.2d 921, 931 n.8 (D.C. 2003) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992)).

Appellants premise the core of their substantive due process claims on *Tri County Industries v. District of Columbia*, a case from our colleagues on the D.C. Circuit. 104 F.3d 455 (D.C. Cir. 1997). The District relies heavily on this case as well. In *Tri County Industries*, the D.C. Circuit interpreted "the more nebulous

---

[3] 42 U.S.C. § 1983, entitled "Civil action for deprivation of rights," is the vehicle through which a plaintiff may hold every person, or governing body, acting under the color of law liable for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

branch of substantive due process" whereupon the plaintiff needs to show "grave unfairness" resulting from the actions taken by state officials. *Id.* at 459. According to the D.C. Circuit, in order to show grave unfairness, the plaintiff must allege either "(1) a substantial infringement of state law prompted by personal or group animus, or (2) a deliberate flouting of the law that trammels significant personal or property rights." *Id.* Consistent with the first formulation's "substantial infringement," trammeling requires actions "that[,] in their totality[,] are genuinely drastic." *Id.* Under either formulation, a "substantiality requirement" is built in because "[a] mere state law violation does not give rise to a substantive due process violation"; however, "the manner in which the violation occurs as well as its consequences are crucial factors to be considered." *Id.*

Considering that Appellants and the District both agree that *Tri County Industries* is directly applicable here, we will proceed to analyze the parties' substantive due process arguments using the D.C. Circuit's framework. Rather than outright adopt *Tri County Industries*, however, we reserve that question for a future case where this court may benefit from briefing on the strengths and weaknesses of such a course.

To preface, Appellants do not allege any wrongdoing from the Commission on account of personal or group animus. Therefore, our inquiry will focus on *Tri*

*County Industries'* second formulation, whether the Commission deliberately flouted the law such that it trammeled Appellants' significant personal or property rights in a genuinely drastic manner. Appellants fail on each assertion.

We begin with Appellants' assertion that the Commission's failure to collect signatures violated their substantive due process rights. Finding no violation, we move on to consider Appellants' argument that the Commission failed to adequately consider the easement between them and Developer and resulted in a trammeling of their rights. We hold that the Commission's alleged failure did not amount to a trammeling of Appellants' rights and affirm the trial court's dismissal.

### 1. The Commission's failure to collect Appellants' signatures

Appellants' claim that the Commission's failure to require Appellants' signatures in the Developer's Design Review application rises to egregious conduct. In their complaint to the Superior Court, Appellants cite to 11 D.C.M.R. Subtitle Z § 301.4 and argue the Commission "cannot grant Design Review approvals without the signature of each 'owner of property included in the area to be developed.'" The complaint went on to assert that the location of Appellants' properties and the easement they share with Developer necessitated their signatures in Developer's Design Review application. Appellants then claim, in conclusory fashion, that the Commission "deliberately flouted the law by granting Design Review Approval

when the applicant did not include Plaintiffs' signatures in their application despite there being an admission that the easement was not finalized." The resulting "grave unfairness" came from Appellants' immediate placement into a defensive negotiating posture with Developer which led Appellants' "to make difficult decisions" that "ultimately impacted future use and enjoyment of [Appellants']" properties.

The zoning regulations require signatures of each property owner within a proposed development area to be included in a Design Review application. 11 D.C.M.R. Subtitle Z § 301.4 ("The name, address, and signature of each owner of property included in the area to be developed . . . shall be included in the design review application."). Although Appellants' property abuts the proposed development property, the necessity to include their signatures in the application is not at all obvious and was less so at the outset of the Design Review process. However, assuming Appellants' signatures were required, the Commission's failure to collect their signatures can hardly be said to be the type of genuinely drastic trammeling of property rights envisioned by the *Tri County Industries* court. In fact, the D.C. Circuit's remark that any *mere* state law violation does not constitute a substantive due process violation would seem to encapsulate this very scenario. *Tri Cnty. Indus.*, 104 F.3d at 459.

Nevertheless, considering Appellants' claim that the Commission flouted the law by granting the Design Review application and "failed to conduct its most basic duties" by not requiring Appellants' signatures, Appellants do not assert any facts to show the Commission's acts were intentional and not merely negligent. Absent a showing of purposeful conduct by a government official, a substantive due process claim must fail on the merits. *See Lewis*, 523 U.S. at 849 (stating that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). As the trial court aptly stated, "[w]hile the failure to require the signatures . . . in the developer's application may be an inadvertent error, an honest mistake, agency confusion, or even negligence, such a finding does not support the type of egregiousness that shocks the conscience or gives rise to a due process violation." We agree. The complaint, with respect to this claim, fails to plausibly assert a substantive due process claim.

2. *The Commission's consideration of Appellants' and Developer's easement*

Moving on to Appellants' second claim, that the Commission deliberately flouted the law by approving the Design Review application despite knowing of the unresolved nature of the easement agreement between Developer and Appellants, Appellants fare no better. Beginning again with Appellants' complaint, they alleged that the Commission "cannot grant Design Review approvals without a detailed

description of easements," and that applicants must provide "any other information needed to understand the proposed project." Given the location of the easement and the Commission's knowledge that it was not "finalized," Appellants alleged that the Commission "deliberately flouted the law by granting Design Review Approval when the applicant did not include 'other information needed to understand the proposed project' despite there being an admission that the easement was not finalized and there being some dispute as to whether the proposed project encroached on [Appellant] Dr. Samaddar's property." Thus, Appellants alleged that the Commission "arbitrarily approved the Design Review Application without having any understanding of the ultimate status of an easement [Developer] admitted was not finalized." The asserted resulting injuries are the same as the first claim; Appellants were "placed into a defensive posture" and "were forced to make difficult decisions."

The zoning regulations require Design Review proposals to include a "detailed site plan, showing the location and external dimensions of all buildings, and structures, utilities and other easements," as well as "[a]ny other information needed to understand the proposed project." 11 D.C.M.R. Subtitle Z § 301.10(g), (n) (2017). However, for many of the same reasons stated for the first claim, Appellants fail to state facts that indicate the Commission acted with such egregious,

outrageous, and purposeful disregard for the zoning regulations as to shock the conscience.

First, Developer's application to the Commission contained several design plans that included Appellants' properties and detailed the dimensions of the easement agreement already signed by each of Appellants and Developer. On its face, Developer's application was consistent with the zoning regulations and could not have reasonably set off alarm bells within the Commission that some potentially relevant information was missing from the application. Second, at the Commission's public hearing, where the Commission considered statements from Developer and interested parties, including Appellants, Developer represented that the easement agreement was signed and executed and only needed to be recorded to take effect. Commissioner May understood these representations to mean that no impediment existed to prevent Developer from developing the easement area as intended in the submitted plans.

Regarding the easement itself, neither appellant Keagle nor Dr. Samaddar disputed its existence or finality at the hearing.[4] Appellant Dr. Samaddar expressed

---

[4] Appellant Keagle acknowledged the agreement in his statements to the Commission: "it was mentioned like [Developer] gave us the easement. The easement always existed. It was always there. All [Developer] did was add two extra feet, which we did want more."

concern with how the easement was to be used, and requested the Commission review the easement, but did not dispute the existence or finality of any agreement. In response to Dr. Samaddar's concerns, the Commission aptly stated that it did not have authority to resolve any private land dispute between Developer and Appellants but made it clear that the two would need to agree in a "meeting of the minds," before determining how they would use the easement. As far as the project development was concerned, the Commission concluded the easement was sufficient to warrant the project's approval and reiterated the existence of the easement in its order to approve Developer's Design Review application.

The record plainly indicates that the Commission was aware of the easement at issue, considered the parties' concerns regarding the easement, and made what it believed to be the correct decision in approving Developer's Design Review Application based on the record before it. Whether Developer misrepresented facts to the Commission or the Commission itself was mistaken in its understanding of the finality of the easement due to some lack of diligence, neither possibility equates the Commission's conduct to egregious conduct. Indeed, Appellants' briefing acknowledges that "[i]nadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress for damages." We would agree; the Commission's conduct in considering the parties' easement did not rise to that of a constitutional violation.

Finally, appellants' assertion that they suffered grave unfairness manifest in a disadvantageous bargaining posture contradicts the record and is itself a conclusory statement.[5] *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.). We agree with the trial court's finding that "it cannot be fairly argued that the Commission did not consider [Appellants'] concerns regarding the easement or the impact that the development would have on the existing easement." The Commission's conduct may have been negligent, at most, but it was not egregious. Appellants failed to assert a substantive due process claim both in the perfunctory nature of their pleadings and on the merits of their pleadings.

## III. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

*So ordered.*

---

[5] The record indicates that Appellants had ample opportunity to, and did, participate in the Design Review process to voice their concerns with the Commission and also pursued multiple litigation strategies to effectuate their bargaining posture.